Good morning, Your Honors. Karen Selden on behalf of COSTCO, and I'd like to reserve five minutes for rebuttal. All right. Thank you, Counsel. COSTCO is well aware of the deferment typically given to labor arbitration awards, but this is not a typical case. Based on a single typo in a single document, COSTCO is being ordered to reinstate a forklift driver who was caught on tape dealing cocaine to co-workers inside a COSTCO store. The award must be reversed for three independent reasons. First, reinstating Mr. Diaz to his position violates well-established public policy. Second, how the arbitrator conducted these proceedings was so bizarre and so prejudicial to COSTCO that, at the very least, a new arbitration should be ordered. And third, the award doesn't draw its essence from the collective bargaining agreement because it imports the concept of double jeopardy into an agreement that specifically prohibits tax and modifier. So I'd like to begin with the public policy. Well, if you're going to begin with the public policy, then what is your explicit, well-defined, and dominant policy that militates against this award? Thank you, Your Honor. There are, in fact, at least three different ones that COSTCO contends converge to provide the public policy basis on which to reverse this award. First, there are- Well, just a minute, just a minute. You know that the contractual agreement allows the reinstatement with certain conditions, right? The collective bargaining agreement does, yes, Your Honor. And so then what, I mean, I'm trying to figure out what policy, explicit, well-defined, dominant, we can only use those words and I review my notes because I forget them, I'm getting too old, policy militates against this. Yes, and Your Honor, there are three. There's, of course, the criminal laws, both state and local, that make a felony punishable by 20 years. There's also, COSTCO, as an employer under OSHA and Cal-OSHA, has a duty to provide a workplace that is free from conditions that are likely to cause serious physical harm, and there are specifically Cal-OSHA regulations that delineate how forklift drivers are to be certified. Is there any evidence in this record that Diaz ever used drugs while on the job? That Mr. Diaz specifically? No, Your Honor, we don't have evidence. Is there any evidence that he ever sold them to others who worked in safety-sensitive positions? We have in the record the statements from the two employees who said that he was the They were not themselves, but they did report that Mr. Diaz was the drug dealer for the warehouse. That is in the statement. So, COSTCO does not know for sure whether he also dealt drugs to those who were in his safety-sensitive position, but we do know that he was known as the drug dealer for the warehouse, and COSTCO was prevented from finding out more because Mr. Diaz refused to cooperate in the investigation. So the risk remains that he certainly did, but we do not have anything in the record to confirm one way or the other. Well, bottom line, all of this evidence was in charge, it was in front of the arbitrator, yes? It was not, Your Honor, in fact, and that is the second basis. Well, but just a minute, just a minute. It was in front of the arbitrator what the two employees had said, wasn't it? No, Your Honor. The only thing in front of the arbitrator was the corrective consultation that, in fact, the union wanted to have redacted. So it just showed the two major offenses, the refusal to cooperate and the possession of drugs. And based on that, the arbitrator refused to let in any of the evidence concerning the seriousness of the conduct. So the arbitrator did not hear... Well, just a minute. What are you talking about, the seriousness of the conduct? I thought the arbitrator wouldn't let in any of his past record. He would not let in information regarding this offense, and that's even confirmed by the declaration from Mr. West of the union, that all the arbitrator knew was that he dealt drugs. He did not know that he had dealt cocaine to two employees who signed witness statements to that effect. He did not know that Mr. Diaz was caught on video doing so. He did not know that these employees reported that he had dealt cocaine five times within the space of the previous two months. He did not know that Mr. Diaz left the premises in the middle of the investigation over the instruction of the warehouse manager when he heard the cops were coming. And he did not know that the two employees who cooperated in this investigation were placed on investigatory suspensions pending further investigation, which, if you think about it, makes very little sense to say that the two employees who cooperated in the investigation were placed on investigatory suspension, and yet Mr. Diaz, who refused to cooperate, that Costco would simply just give him a slap on the wrist and a three-day suspension. It defies logic. And we contend that had the arbitrator heard all of this evidence, he could not have come to the conclusion that this three-day suspension was the final disciplinary act here. Counsel? Yes, Your Honor. You said there were three public policy reasons that militate against the award. You said the criminal laws, the OSHA duty. What was your third one? And the third one, Your Honor, beyond the health and safety of employees, is that Costco, as a business open to the public, has a duty of care to its members who often shop with their children in tow, and they expect the warehouse to be a safe and drug-free place where employees on heavy machinery are not dealing drugs to those in their vicinity. So we contend that the criminal laws, the duty of care to employees, and the duty of care and safety to the public converge in this case to strongly militate against what is essentially a no-strings-attached reinstatement that would put Mr. Diaz back on the forklift tomorrow. How long was he actually suspended for? My impression was they fired him virtually the next day. So he was placed on a three-day suspension. That's the Costco's usual process for an investigator suspension. And then when he was brought back in, he was terminated. That is correct, Your Honor. And so if I may continue on the public policy point, I know the union analogizes to a lot of the drug use cases, such as Eastern and MISCO and the SoCalGas case, but I did want to highlight there are some vastly different concerns when it comes to drug dealing. For one, there is no similar rehabilitation concern with respect to drug dealing as there is with drug use. There is no law that says that we have a public interest in rehabilitating drug dealers. So we have a more serious offense and no countervailing public policy. Well, I guess that depends on the law. Having been a district judge and having been involved with trying to determine about drug dealers and drug use, there's many times when you find that the rehabilitation of the drug dealer is really what is needed because he's only a dealer because of his use. That may be so, Your Honor, but again, here we don't have evidence that Mr. Diaz was himself using and nor do we have any... Well, but just a minute, just a minute. The thing that worries me is that I want to know what the public policy explicit, well-defined, and dominant is. Is there an explicit, well-defined, and dominant policy that says anybody who deals with drugs is automatically out of work? No, Your Honor, and we don't believe that. Is there any dominant policy, explicit, well-defined, or dominant, which says that double jeopardy could not apply in this situation, especially when it's a part of the normal label practice? Your Honor, we don't believe that the policy has to be so explicit as to make the arbitration award itself... Well, I understand, but when I see the words explicit, well-defined, and dominant, it doesn't seem to me that it's just simply what the company would like to do. It's got to be a policy out there in the, if you will, in the labor market that goes on forever. It's not something that just Costco comes up with. And we don't believe that it's just anything that Costco comes up with. Again, we think that there are extreme drug safety issues and employee safety issues to have somebody literally driving in on a forklift and tossing a bag of cocaine to a co-worker and then being caught on video doing so and then denying that he did so. And even beyond the public policy concerns, Your Honor, again, the arbitrator didn't hear this evidence, and on top of that, we believe that the process in this case was so unfair to Costco based on the arbitrator's repeated ex-party contacts with the union, his offering of money that Costco hadn't even authorized, directly dealing with agreement in a way that the union itself said was extraordinary, peculiar, and if not improper. And so at the very least, we contend that all of these irregularities require a new arbitration because the way this arbitration was conducted, the refusal to consider material evidence... When you say the way it was conducted, are you just saying what was allowed in as evidence? Is that what you're saying? It's three things. It was the basically hobbling of Costco's double jeopardy defense by refusing to allow in the evidence. It was what the union called wheeling and dealing with agreement behind Costco's back, offering him money, asking him what it will take for him to resign. And then the arbitrator disappears after issuing an improper email award and says, I'm doing this so I can look myself in the mirror. We don't know what that statement means. It could very well mean the arbitrator couldn't get behind his own ruling, that he felt he had conducted the proceedings improperly. We simply don't know. And followed by, of course, at the very end, the arbitrator doesn't even bother to send the ruling to Costco. He sends it only to the union. So we think all of those things combine to make it clear that the hearing in this case was not fundamentally fair, which is the baseline for an arbitration proceeding. So at the very least, we would request that the court vacate the award. And I would like to leave the rest of my time for rebuttal unless Your Honors have more questions at this point. Counsel? Good morning, Your Honors. This is Fern Steiner on behalf of Teamsters Local 542. We did address in our briefing the arguments that were made, but I will focus for a moment on the public policy and the fact that Judge, His Honorable Judge Smith has mentioned that you have to find an explicit, well-defined, and dominant policy, and that that policy specifically militates against the relief ordered by the arbitrator. That's what our Supreme Court said in the W.R. Grace case. And in evaluating a public policy argument, the court must focus on the award itself, not as Costco has asked you to do here, the behavior or conduct of the party in question. And that was your Southern California gas decision. We don't believe that. So that you can, the court should enforce a contract that requires an employer to take back an employee who was selling cocaine on the premises where the public goes and where other employees may be engaged in safety-sensitive conduct. And the public policy doesn't have anything to do with enforcing such an agreement? Is that your argument? We don't believe the public policy anywhere says that you have to fire Mr. Diaz.  What's at issue here is a direction that the employer must take him back. And he must take back someone dealing, court dealing in drugs on their premises which are open to the public and in which other employees, if not him, are engaged in safety-sensitive activity. Yes, Your Honor, just as in Eastern they had to take back a truck driver who tested positive, which is an equal violation of the law in that they're a drug user out in the public driving trucks and doing things where they could be using drugs. We understand that this is not something that... He's selling drugs. He's a drug pusher. He's selling it to other people who work there. And there's no question that he did that. But there's no evidence that, in fact, anyone was using drugs, including him, while at work. There was evidence that they were purchasing it from him. They even found these... They even showed these plastic baggies, and I believe one of them may have thrown it away. I don't remember exactly. I mean, again, my impression was that he was selling them to the people there. I mean, if he were a stranger, they could have thrown them out of the premises. But they have to keep them on as an employee because of some concept pulled from the air, and that wouldn't even apply in a criminal case about industrial common law relating to double jeopardy. I mean, that doesn't make any sense to me. If he had been charged, if he had been arrested, and a criminal complaint had been filed, nothing with the double jeopardy clause, even in a criminal case, would not have prevented his subsequent indictment and conviction because he was originally held pending the action of a grand jury. And that's exactly what happened here. I disagree with that. What do you disagree with? That's the criminal. That's the actual application of the double jeopardy clause, not something that was pulled from thin air. But in fact, Judge, I'm not sure. I mean, I'm going to let her answer, but it didn't seem to me that there were... In this case, he was held pending. That's the question with the double jeopardy that the arbitrator had to decide. If you'd answer, counsel, what he asked, I think that's the important question. Thank you, Your Honor. It is an important question. We've never disputed that Costco could have suspended Mr. Diaz's pending investigation, as it did with the other two employees. We've never disputed it. And had they done that... Isn't that exactly what they did here? No, Your Honor. If you took out the words double jeopardy... No, Your Honor, because they used the word... Which does not appear in the agreement and in which the First Circuit says does not apply to the same extent as it does in the criminal context. They suspended him for three days pending a decision of, I believe, the vice president as to what the final disposition would be with respect to him. And I think they told him that. I don't see any due process violation here, which is this concept of double jeopardy is really a part of this so-called industrial common law, common labor law. Your Honor, I understand you disagree with our position, but they issued a disciplinary suspension of three days. They had an option under the collective bargaining agreement, which they chose not to take in this case, to suspend him pending investigation, as they did with the other two. They knew how to do it. They didn't in this case. And while it may seem... Counsel? Yes, Your Honor. This is Judge Rollinson, but doesn't that beg the question of whether or not the arbitrator should have allowed evidence that was thought to be presented by Costco to show that it was their intent to do an investigatory suspension as opposed to a disciplinary suspension, and it was an inadvertent use of the word disciplinary as opposed to investigatory because the other two were specifically labeled that way and this was a mistake. Why wasn't it unfair to prevent Costco from presenting that evidence? Your Honor, that evidence was presented on whether it was a mistake. I pointed to the, in our briefing, Mr. Areola's acknowledgement that they argued it was a clerical error, that they were planning to suspend him,  and the evidence that was not brought in or allowed in was the evidence related to drug dealing because that wasn't the issue in the due process case. The only issue before the arbitrator was whether double jeopardy attached. But they had the full... Counsel, the problem I see is that the seriousness of the offense militates toward the fact that it was a mistake because if the two who were purchasing drugs were suspended with an investigation, it doesn't really make sense that the person who was dealing the drugs would have only been given a three-day suspension as his total punishment. Your Honor, unfortunately when you're talking about due process violations, the underlying crime or they don't say you can apply double jeopardy, Miranda rights, all of those rights, only in certain cases where it isn't a bad crime or things like that. No, I'm not saying it's the crime. I'm saying this is what Costco was considering when they were deciding how to proceed with discipline. And so the seriousness of the offense comes in to inform us of what Costco's intent was. But, Your Honor, that happened in the arbitration. That's in Mr. Arreola's declaration. That's in Mr. West's declaration. And the arbitrator disagreed with Costco. And now Costco is asking this court to overrule the arbitrator's determination of what that contract language means based on the arguments that have been made to this court and were made to him, and he came to a conclusion. And the deference that needs to be given here, we understand there is the exception for public policy, and we don't believe that's been met. And absent their meeting that exception, this court cannot substitute its judgment for the arbitrator's ruling in that case. Counsel, could we move to – I'm sorry, Judge Corman, did you have another question? I noticed in the First Circuit, which is one of the leading cases, says that the industrial double jeopardy does not apply when the initial discipline is imposed with the understanding that it may not be final. I agree. That's exactly what happened here. In fact, he was told that he was being suspended pending the decision of the vice president. He was not told that, Your Honor. He was read the words on that constructive discipline word for word, and that's what he was told. Nothing else. Could we move to the misconduct of the arbitrator as described by Costco? Is it your position that this is the type of arbitrator that Costco bargained for? Yes. An arbitrator who had ex parte communication with the employee, who did an email award as opposed to a reasoned decision and only sent the award to one side, you think that's what Costco bargained for? Both parties bargained for him to hear the case and submitted the case and the only issue of double jeopardy to him, Your Honor. So it's your view that the arbitrator is not held to any standard of conduct when he is performing as a neutral arbitrator because he was the neutral. He was supposed to be the neutral arbitrator in this case. And we did go through all of the possible bases to vacate both under the labor laws related to drawing essence from the contract, under the Federal Arbitration Act, under the California Arbitration Act, and we went through each of those and set forth our argument as to that there was no basis to vacate under any of those authorities. So if an arbitrator goes rogue, you still say that that's what the party's bargained for and the arbitration should stand, even though it's an email that's one sentence. I don't agree that I'm saying that, Your Honor. I'm sorry if I gave you that impression. There are grounds and ways that an arbitrator's decision can be vacated, but we've set forth why that did not occur in this case. What do you think the arbitrator meant when he sent this email to you announcing his decision and saying that he was resigning because he couldn't look himself in the mirror? This strikes me, along with his other conduct in this case, as totally bizarre, including the notion of having ex-party conversations without notice to the other side with your client. I mean, his whole conduct here strikes me as being totally bizarre. I don't know that I disagree completely, Your Honor. What does that mean, that he's resigning after in the same email he says he's resigning because he won't be able to look himself in the mirror? I believe that means that he felt that Mr. Diaz was a drug dealer, contrary to counsel's representation, that he didn't know that and that he felt that he, under the double jeopardy rule, needed to follow it and to reinstate him. Now, am I right that the double jeopardy rule doesn't appear anywhere in the agreement? As I wrote, Your Honor, it's a concept of just cause which does appear in the collective bargaining agreement. But he didn't say that. He said double jeopardy. And that was the issue submitted to him by the parties, as we demonstrated in the documents. And that notion that this was just cause can stand? Yes, Your Honor. Even under a deferential view, that this is some form of double jeopardy, which it isn't, even under the Industrial Common Law, which the First Circuit said that that concept was not as strict as the double jeopardy clause. And the double jeopardy clause wouldn't have prevented, under analogous circumstances, him being charged formally with a crime. But he wasn't charged formally, even though the police were involved. And double jeopardy does attach when discipline is issued, and then you're disciplined again. In this case, it was not an investigatory suspension. There was no dispute they could do. Except for the word discipline. Well, that's important. Well, it may or may not be. But the actual facts, aside from this calling it discipline, was that he was suspended for three days, pending a review by the vice president, which may have been required by the collective bargaining agreement, and then he was terminated. So if they had said this is investigative instead of disciplinary, nothing would have changed except the label. And we wouldn't be here today. I see. So. Okay. And unless there are other questions, I'm down to 17 seconds. So. Counsel. Yes, Your Honor. Oh, back, counsel. Thank you. I'd first like to just report to Mr. West's declaration about what actually was submitted and not submitted in the arbitration. Mr. West, who is the union rep, said that Fletcher Evans, the Costco representative, started to introduce evidence relating to alleged drug possession and dealing. But I stated the union was not contesting the violation, that the statement limiting the issues to double jeopardy meant that there was no need for testimony of the facts of what occurred. That's at ER 206. So there was not, contrary to counsel's contention, evidence about what actually occurred inside the Costco. Counsel, do you agree with the polls and counsel that the party submitted the double jeopardy issue to the arbitrator? Your Honor, that is what the sole basis that the union was grieving the discharge on. So Costco doesn't really have control over the basis on which the union wishes to grieve the grievance termination. Well, the bottom line of that is, yes, that was in front of the arbitrator. Whether the double jeopardy applies, yes. That's exactly right. And whether that concept of double jeopardy could be brought up in the clause for sufficient and proper cause. That was in front of the arbitrator, was it not? Your Honor, here we have specifically— I mean, your side of it is that it shouldn't have been. But they presented the side that it should have been, and it was in front of the arbitrator. As Justice Cormann had pointed out, Your Honor, this CBA has specific language that prevents adding terms to the— Well, but that isn't an added term if, in fact, it's sufficient and proper cause. That's what the arbitrator decided. And I would direct your honors to the Hawaii Teamsters case from this court. That's 241 F. 3rd, 1177, that says that ordinarily an arbitrator may consider industrial common law. But, quote, an arbitrator has no authority to ignore the plain language of a collective bargaining agreement that limits the scope of his authority. So, in other words, if we take your argument that it's plain language and it isn't there, then we buy it. But that's the problem. And that's the problem I've got with this case at all, in that what deference I'm obligated to give to the arbitrator. You picked arbitration. I didn't. You picked your share of the arbitrators. I didn't. They picked their share. Then somebody picked this other guy. And I can't sit here and try to hear claims of factual or legal error by the arbitrator as it does in lower courts. And that's what you're asking me to do. Your Honor, we would disagree because the FAA and the LMRA do allow the court to entertain claims of non-advanced refusal to hear relevant evidence. Well, just a minute. I'm not even sure the FAA applies to this CBA. There are cases that say the FAA standards and CAA standards. There are cases that say they don't. Yes. The only reason that I could think the FAA might apply here is because your opposition didn't challenge it. And it's been admitted by both sides. I stand admitted by both sides. So you say that the arbitrator had ex-party communications. What was the prejudice? The prejudice, Your Honor, is he was— I mean, you said, and I quote, We are left to surmise who those communications may have influenced, whether it influenced the arbitrator's decision, and to guess as to their impact. Doesn't that say there is no prejudice? Absolutely not. That's what I read directly from your brief. I think what that means is we can have absolutely no confidence that the result that the arbitrator reached in this case was unbiased and untainted. Precisely because— No, I read it as, Where's your prejudice? We're left to surmise who the communications might have been with. We're left to surmise whether they influenced the arbitrator's decision. And we're left to guess the impact. That says there might not be any prejudice at all. The record shows a completely one-sided communication pattern here. He's speaking only with the degree that he's offering money that Costco didn't authorize. And then he resigns because he can't look himself in the mirror. All of these things should leave us with no confidence that the arbitrator acted in a neutral fashion in this case. And we contend that that is more than enough to show prejudice. Because short of getting inside the arbitrator's head, there is no other way to interpret this pattern of conduct. I see I'm over my time, so I'm happy to answer any more questions that your honors may have. Otherwise, I will submit. There are no further questions. Thank you to both counsel for your helpful arguments. The case just argued is submitted for discussion by the court.
judges: Rawlinson, N.R. Smith, Korman